In the Matter of the ESTATE
OF Katherine ROHRICH,
Deceased.

James ROHRICH and Clemens Rohrich,
Appellants and Cross–Appellees,

v.

Joanne NOZISKA, Appellee
and Cross–Appellant.

Civ. No. 920245.

Supreme Court of North Dakota.

Feb. 25, 1993.

Charles D. Evans of LaRoy Baird, P.C., Bismarck, for appellants and cross-appellees.

James J. Coles of Wheeler Wolf, Bismarck, for appellee and cross-appellant.

VANDE WALLE, Chief Justice.

James Rohrich and Clemens Rohrich, as co-personal representatives of the estate of their mother, Katherine Rohrich, appealed a county court "Order Approving Second Amended Report and Final Account and Distribution" which reflected a memorandum opinion denying expenses and fees submitted by them and awarding attorney fees to Joanne Noziska. Joanne cross-appealed regarding fees paid to James and Clemens which allegedly were not related to their personal representative duties. We affirm.

Katherine Rohrich died on June 22, 1989. She was survived by four children, James Rohrich, Clemens Rohrich, Pius Rohrich, and Joanne Noziska. James, Clemens, and Pius were appointed as personal representatives of her estate. In order to avoid a creditor's claim, Pius renounced his interest in the estate on March 2, 1990, but continued to serve as a personal representative until May 2, 1990.

During the course of the estate administration, numerous conflicts developed between Joanne and her brothers. Allegations were made which included purposeful conduct by failure of the co-personal representatives to include significant estate assets in their accounting, mismanagement of the estate's tangible assets, breach of fiduciary duties, transferring estate assets to Pius despite his renunciation, and conflicts of interest because the attorney for the estate also served as the attorney for Pius.

On May 18, 1990, James and Clemens petitioned the county court to allow and approve the Final Report and Account submitted by them. Joanne resisted this motion. Judge Donovan Grenz, a judge of the County Court of Emmons County, denied the approval of the Final Report and Account due to inconsistencies in the accounting, illegal expenditures, and faulty claims. The court notified the parties that it would reconsider approval of the Final Report and Account should a proper request be made.

The case was subsequently reassigned to Judge Gail Hagerty, a judge of the County Court of Burleigh County, who was assigned to Emmons County Court for this probate matter. Judge Hagerty did not hold a hearing, but considered the record and evidence presented in front of Judge Grenz, and issued a memorandum decision on September 23, 1991. Because Pius's interests were distinct and different from those of the estate, and because he continued to act as a personal representative and be advised by the same attorney who advised the estate, the court found that close scrutiny of his dealings with the estate was necessary.

In the memorandum opinion, Judge Hagerty considered a $5,000.00 claim which Pius submitted to the estate for the management of Katherine's farming and ranching operation for work done between July 1988 and May 1990. Because Katherine died in June 1989, the court determined that approximately half the claim was for work done prior to her death. The court found that a claim for the pre-death portion was not properly submitted to the estate, so the court allowed only $2,500.00 of the $5,000.00 claim. Similarly, Pius made a claim against the estate for parts and materials purchased in relation to Katherine's business prior to her death, and the court refused the claim because it was not properly presented to the estate.

Next, the court considered the issue of whether James and Clemens should be paid their personal representative fees. Joanne objected to the payment of fees on the grounds that James and Clemens breached their fiduciary duty to the estate. The

court found that, to the estate's detriment and despite Pius's renunciation, James and Clemens had endeavored to allow Pius to benefit from their administration of the estate through a number of methods. First, James and Clemens had allowed for the payment of several claims which the court concluded were not properly documented. Second, the court found that Farm Credit Services stock worth $8,815.00 was not filed in the Final Report and Account which James and Clemens knew was a part of the estate. Both Pius and James testified they knew nothing about the amount of money they would receive from the stock. However, they also suggested that Pius was entitled to one-half of its proceeds, but that Pius would "consent" to have the payments divided equally between James, Clemens, and Joanne if she would accept an estate settlement offered by James and Clemens. Nothing in the record suggests there was ever any proof substantiating the allegation that Pius was to receive one-half of the stock payment, but arguments were nonetheless made that Pius should benefit because he had renounced his interest in the estate. The court found that because the personal representatives attempted to allow claims which were not properly documented and avoided including assets in the estate in order to benefit Pius, they violated their fiduciary duty to the estate.

The court also recognized the legal fees incurred by Joanne in her efforts to force James and Clemens to properly administer the estate. The court stated that it would consider requiring some part of those fees be paid by the estate because, without such intervention, it was clear to the court that the estate would not have been properly administered.

In an order issued on November 5, 1991, Judge Hagerty held that Pius be paid $2,500.00 for management costs incurred after Katherine's death, but denied him the bill for materials and supplies incurred prior to her death. The court denied James and Clemens any additional personal representative fees beyond those allowed by Judge Grenz, and awarded attorney fees to Joanne to be paid by the estate.

James and Clemens raise two issues on appeal: (1) that inclusion of payments to Pius did not constitute a breach of their fiduciary duty, and (2) that the award of Joanne's attorney fees was an abuse of discretion. Joanne counterclaimed on the issue that the court erred in allowing any fees to James and Clemens for services not related to their personal representative services.

### I. Breach of Fiduciary Duty

 A finding of a breach of a fiduciary duty is a finding of fact. *Black v. Peterson*, 442 N.W.2d 426 (N.D.1989); *Cudworth v. Cudworth*, 312 N.W.2d 331 (N.D.1981); *In re Estate of Mehus*, 278 N.W.2d 625 (N.D.1979); *Slope County v. Consolidation Coal Co.*, 277 N.W.2d 124 (N.D.1979). We will not set aside a trial court's findings of fact unless they are clearly erroneous. Rule 52(a), NDRCivP; *Mehus, supra*. A finding of fact is "clearly erroneous" only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. Rule 52(a), NDRCivP; *Mehus, supra; In re Estate of Elmer*, 210 N.W.2d 815 (N.D.1973).

 The finding of a breach of fiduciary duty owed to the estate by James and Clemens was made after an extensive factual analysis of the evidence presented to the court.[1] There is clear evidence that James and Clemens attempted to enrich Pius at the estate's expense. We find noth-

---

1. James and Clemens assert that Judge Hagerty based her decision on the breach of their fiduciary duty on the fact that formal presentment of Pius's claims was lacking, but that they attempted to pay the claims anyway. It is true that formal presentment of claims is not needed to apprise the personal representative of a claim against the estate—actual notice is all that is needed. *In re Estate of O'Connell,* 476 N.W.2d 8 (N.D.1991); *Nickisch–Ressler Funeral Home, Inc. v. Romanick,* 450 N.W.2d 416 (N.D.1990). However, it is evident from Judge Hagerty's memorandum opinion that the finding of a breach was also based on the nondisclosure of the stock income and matters other than mere lack of formal presentation of the claims.

ing clearly erroneous with the trial court's finding, and we affirm on this matter.

## II. Statutory Basis for Attorney Fees

The court found that some of Joanne's attorney fees should be paid by the estate because it was "clear the estate would not have been properly administered" without Joanne's intervention. James and Clemens contend that the court abused its discretion by awarding the fees.

■ The court did not specify the authority to award attorney fees. Although Rule 54, NDRCivP, and Title 32, NDCC, do not require that the court cite to statutes, rules, or case law when entering orders or judgments, it is helpful to the appellate process if it does so. _Hieb v. Jelinek_, 497 N.W.2d 88 (N.D.1993). Therefore, in order to determine the propriety of an award of attorney fees, we must first determine the statutory basis for the award.[2]

■ In probate proceedings, fees may be allowed pursuant to section 30.1–18–20, NDCC,[3] which reads:

"If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not, he is entitled to receive from the estate his necessary expenses and disbursements, including reasonable attorneys' fees incurred."

Relying on this statute, we have held that a personal representative is entitled to compensation from the estate for reasonable attorney fees incurred in defending or prosecuting a proceeding in good faith. _In re Estate of Flaherty_, 484 N.W.2d 515 (N.D.1992); _In re Estate of O'Connell_, 476 N.W.2d 8 (N.D.1991). In considering the award of attorney fees, the county court

stated in its Memorandum Decision and Order, "The Court will consider requiring that some part of those fees be paid by the estate, since without such intervention, it is clear the estate would not have been properly administered." In interpreting an award of attorney fees under this statute, we have held that attorney fees may be awarded in some circumstances if the action "benefited the estate," _Flaherty, supra; In re Estate of Honerud_, 326 N.W.2d 95 (N.D.1982). We therefore assume that the court used this statute as a basis for the award of attorney fees. The question before us, then, is whether an attorney who is employed by a beneficiary of a will can recover attorney fees from the estate pursuant to section 30.1–18–20, NDCC.

Very few North Dakota cases have specifically dealt with whether attorney fees are recoverable by someone other than attorneys for the personal representative. Those which have, generally allow attorney fees based upon sections 28–26–01, 28–26–10, & 28–26–30, NDCC. _Supra_, f.n. 3. Although Joanne would have us construe section 30.1–18–20, NDCC, and the general power of a court, to allow attorney fees for both personal representatives and beneficiaries, we decline to apply such a broad reading.

■ In deciding whether to award attorney fees out of a decedent's estate, we generally determine whether the personal representative acted in good faith either in propounding the will to probate or defending it. _Honerud, supra_. Moreover, we have focused on whether a litigant's actions benefited the estate or whether the action was brought or defended in order to benefit only one person or a group of persons. _Id._ If a personal representative's actions do not benefit the entire estate but

---

2. An argument was made that _Olson v. Fraase_, 421 N.W.2d 820 (N.D.1988) requires a court to specifically cite to authority for an award of attorney fees. _Olson_, however, merely stands for the proposition that, in the ordinary civil action, an award of attorney fees _must_ have some statutory basis, not that the court must explicitly cite to such a basis.

3. James and Clemens also cite to the provisions of Chapter 28–26, NDCC, in support of their

contention that the court erred in awarding attorney fees. This chapter—specifically, section 28–26–01, NDCC, which states that attorney fees may be awarded by agreement between the parties, or by a finding of a frivolous claim, and section 28–26–30, NDCC, which states that attorney fees may be awarded if the pleadings were not made in good faith—does not apply to this case.

instead are done to merely benefit himself personally, then his fees are generally disallowed. *Id., Liebelt v. Saby,* 279 N.W.2d 881 (N.D.1979); *In re Estate of Zonas,* 42 Ohio St.3d 8, 536 N.E.2d 642 (1989). Because an attorney employed by a beneficiary usually seeks to benefit only his or her client and not the entire estate, regardless of their professed motives or resulting outcome, attorney fees are disallowed.

█ We choose to distinguish between recovery of attorney fees by a beneficiary as opposed to recovery by a personal representative, primarily because the duties, responsibilities, and interests of these two groups are inherently different. A personal representative's interest in a will contest should be to preserve and protect the property of the estate. NDCC § 30.1–18–03; *Cudworth, supra.* Although the personal representatives may defend the will, there are no requirements to do so and the burden may be cast onto the beneficiaries. A personal representative, acting as a fiduciary, represents the entire estate and has the duty to distribute the estate property, but should not enter into controversies among rival contestants. *Id.; Zonas, supra.*

█ On the other hand, the interest of beneficiaries in a will contest is necessarily a personal one. *Id.* The outcome to such a contest has a personal and direct effect on them alone—not the entire estate. Therefore, since a beneficiary's interest in a will contest is to protect a personal interest and not to benefit the estate, attorney fees are not allowed. We determine that section 30.1–18–20, NDCC, applies only when the personal representative or other fiduciary to the estate retains counsel which is necessary for the benefit of the entire estate.

Thus, we have frequently disallowed attorney fee awards on behalf of personal representatives when it was determined that the legal services were performed primarily for the personal interest of the personal representative and not for the benefit of the estate as a whole. *Honerud, supra.* Other courts have used a similar analysis in this same issue by distinguishing the roles of personal representatives and beneficiaries in holding that statutes similar to

section 30.1–18–20, NDCC, do not allow for a fee award to beneficiaries of a will. *See Zonas, supra; Proudfit v. Coons,* 137 Colo. 353, 325 P.2d 273 (1958). There is no statutory basis for an award of attorney fees in this case.

*III. Equitable Basis for Attorney Fees*

█ We have long held that the allowance of fees and costs is a creature of statute, and the allowance therefore cannot be made unless authorized by statute. NDCC § 28–26–10; *Tharaldson v. Unsatisfied Judgment Fund,* 225 N.W.2d 39 (N.D.1974); *Thorvaldson–Johnson Co. v. Cochran,* 252 N.W. 268 (N.D.1934). However, regardless of statutory authority, some states allow an award of attorney fees to successful beneficiaries who challenge a will on the grounds of equity. *In re Keller,* 65 Ohio App.3d 650, 584 N.E.2d 1312 (1989); *In re Estate of Chrisman,* 723 S.W.2d 484 (Mo.Ct.App.1986); *In re Estate of Murray,* 682 S.W.2d 857 (Mo.Ct.App. 1984); *In re Estate of Brown,* 137 Ariz. 309, 670 P.2d 414 (Ct.App.1983). Although in North Dakota the jurisdiction of a county court sitting in probate matters is very broad, and the county court can take necessary actions to preserve the assets of the estate for the ultimate beneficiaries, *In re Estate of Ridl,* 455 N.W.2d 188 (N.D.1990), the question is presented whether county courts can exercise equitable jurisdiction in awarding attorney fees in probate matters.

Prior to North Dakota's adoption of the Uniform Probate Code, we held that county courts have no equitable jurisdiction in probate matters. Because probate orders could be appealed to district courts which exercised general jurisdiction, we held that equitable matters not addressed in the county courts could be addressed in the district courts. *In re Estate of Edinger,* 136 N.W.2d 114 (N.D.1965).

When the Legislature adopted the North Dakota version of the Uniform Probate Code, it omitted sections 1–308 and 1–309 of the Uniform Code. These sections, assuming county courts to be courts of general jurisdiction, provided for a direct appeal from the county courts to the supreme

courts of the adopting states. Instead, North Dakota left intact the prior procedure requiring that probate appeals from county courts be taken to the district courts. *In re Estate of Bieber*, 256 N.W.2d 879 (N.D.1977). With the adoption of the Uniform Probate Code, we held that the adoption did not broaden the county court's power to include the exercise of equitable jurisdiction. *In re Estate of Jones*, 288 N.W.2d 758 (N.D.1980).

However, after *Edinger* and *Jones* were decided, the Legislature undertook a radical revision of the county court structure, wherein equitable jurisdiction was granted to county courts over certain matters. NDCC §§ 27–07.1–17, 30.1–02–02. These changes in county court jurisdiction were addressed in *In re Estate of Binder*, 366 N.W.2d 454 (N.D.1985), where we held that the county courts have concurrent jurisdiction in regard to trusts as do the district courts, conferring upon them equitable jurisdiction in trust matters under the Uniform Probate Code. As a result of *Binder*, the holdings of *Jones* and *Edinger* which held that county courts have no equitable jurisdiction were no longer dispositive of equitable jurisdictional limitations imposed upon the county courts.

■ In 1981, the Legislature adopted section 30.1–02–06.1, NDCC, which required an appeal from a county court probate judgment to be taken directly to the Supreme Court, thereby bypassing an appeal to the district court. If we adhere to the *Jones* and *Edinger* rationales which prohibited exercise of equitable jurisdiction at the county court level in probate matters, parties would have no equitable remedies available to them. The county courts could not provide equitable remedies in probate matters and, on appeal from such decisions, the Supreme Court's review would be limited to the matters considered

by the county court,[4] [*e.g.*, *Jarmin v. Shriners Hospitals*, 450 N.W.2d 750 (N.D. 1990) ]. Realizing the inconsistent and inequitable result of such an interpretation, we hold that county courts sitting in probate matters have the power to exercise equitable jurisdiction.[5]

It has been held that the equitable power of a court authorizes an award of attorney fees in an action by one person which benefits a class of persons, thus making it equitable to spread the costs of the action among the members of the benefited class. *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). More specifically, some states allow beneficiaries to recover fees in equity when, at their own expense and not for their sole benefit, their attorney's services benefited the estate as a whole by increasing a common fund in which other beneficiaries might share. *Rogers v. Rogers*, 71 Or.App. 133, 691 P.2d 114 (1984); *In re Estate of Katschor*, 637 P.2d 855 (Okla.1981); *In re Estate of Lappy*, 202 Or. 571, 277 P.2d 781 (1954); *In re Estate of Parr*, 287 P.2d 906 (Okla.1955); *cf. In re Estate of O'Brien*, 18 Ariz.App. 375, 502 P.2d 176 (1972).

This "common fund" concept has long been a part of our jurisprudence. *See, e.g., Hildreth v. Western Realty Co.*, 62 N.D. 233, 242 N.W. 679 (1932); *Kilby v. Movius Land & Loan Co.*, 55 N.D. 830, 215 N.W. 284 (1927) [stockholders bringing successful suit on behalf of himself and other stockholders entitled to costs and attorney fees from corporation]; *Beyer v. North American Coal & Mining Co.*, 43 N.D. 401, 175 N.W. 216 (1919) [an action brought by minority stockholders to recover attorney fees incurred in representing corporations in former litigation]. The theory of these cases is equally applicable when a beneficiary benefits the estate.

---

4. Section 30.1–02–06.1, NDCC, specifies that, on appeal from a decision of the county court in a probate matter, appellate review "is governed by the rules applicable to the appeals to the supreme court in equity cases from the district court...." *In re Estate of Sorensen*, 406 N.W.2d 365 (N.D.1987).

5. Other than in trust matters, *In re Estate of Binder*, 366 N.W.2d 454 (N.D.1985), we have not expressly concluded that county courts sitting in probate matters have the power to exercise equitable jurisdiction. However, recent decisions assumed that power. *See, e.g., In re Estate of Hill*, 492 N.W.2d 288 (N.D.1992).

■ In determining if Joanne's action was a "benefit" to the entire estate by increasing a "common fund," we find guidance in our previous holdings of *Flaherty, supra; Honerud, supra; Conway v. Parker*, 250 N.W.2d 266 (N.D.1977); and *In re Estates of Kjorvestad*, 287 N.W.2d 465 (N.D.1980). In these cases, the issue was whether a personal representative could be entitled to attorney fees by bringing or defending an action which resulted in a benefit to the entire estate. We held that a "benefit" to an estate included services that brought "about an enhancement in value or an increase in the assets of the estate." *Flaherty, supra*, at 518. Within the meaning of the common fund doctrine, if the beneficiary's action brought about an enhancement in value or an increase in the assets of the estate, the beneficiary may be awarded fees if the facts justify the award. *Katschor, supra.*

■ When a trial court exercises its discretion after weighing the equities of a case, we will not interfere on appeal absent a showing of an abuse of discretion. *Heinsohn v. William Clairmont, Inc.*, 364 N.W.2d 511 (N.D.1985). Cost and fee awards in equitable actions are likewise governed by the "abuse of discretion" standard. NDCC § 28–26–10; *Lemer v. Koble*, 86 N.W.2d 44 (N.D.1957); *Silbernagel v. Silbernagel*, 79 N.D. 275, 55 N.W.2d 713 (1952).

■ A trial court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner. *In re Kinney*, 495 N.W.2d 69 (N.D.1993). A trial court acts in such a manner when its exercise of discretion is not the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination. *Id.; In re Altshuler*, 171 Wis.2d 1, 490 N.W.2d 1 (1992).

■ In light of the high standard we apply to the review of a trial court's exercise of equitable powers, we conclude that the trial court did not abuse its discretion in awarding $8,846.00 in attorney fees to Joanne. Joanne's action, which resulted in the inclusion of stock proceeds and the exclusion of management and personal representative fees, increased the value of the estate by approximately $15,343.00, and served as a basis for denying any further personal representative fees to be paid to James and Clemens.

■ While we are reluctant to establish a litmus test which would call for an award of attorney fees only if the fee is within a certain proportion to the amount by which the estate was increased in value, we believe equity requires the estate's increase in value to be greater than the attorney fees. *Beyer, supra* [fees to be measured by value of assets saved to the corporation]. In this case, the amount brought into the estate was twice as much as the attorney fees incurred by Joanne. As a result, the value of the estate increased to the benefit of James and Clemens as well as Joanne, so her legal action was not solely for her own benefit. Her actions benefited the estate, for which she should be compensated. *Katschor, supra; Rogers, supra; cf. Parr, supra.*

Under the facts of this case, the county court did not abuse its discretion in awarding Joanne attorney fees, and we affirm the award.

### IV. Joanne's Cross Appeal—Personal Representative Fees

■ Joanne requests that, should we remand this case for additional consideration regarding personal representative fees or attorney fees, we should include a direction to the court to consider additional evidence which may result in the court reducing the amount previously awarded for the personal representative fees. Joanne presents no new evidence nor presents a basis of how or if the court erred. Without an allegation or basis of error, we give no merit to a claim on appeal.

The order of the county court with regard to its finding of a breach of fiduciary duty and award of attorney fees is affirmed. Joanne's cross appeal is denied.

MESCHKE, LEVINE and NEUMANN, JJ., and MAURICE R. HUNKE, District Judge, concur.

MAURICE R. HUNKE, District Judge, sitting in place of SANDSTROM, J., disqualified.